June 8, 1977

## 77–35  MEMORANDUM OPINION FOR THE GENERAL COUNSEL OF THE DEPARTMENT OF DEFENSE

### Rental Fees for Spaces in Military Trailer Parks

This is in response to your letter requesting our opinion whether 5 U.S.C. § 5911 authorizes the Office of Management and Budget (OMB) to determine that the rental fee for trailer spaces in military trailer parks are to be based upon the prevailing rates for comparable private facilities.

In our opinion, OMB has correctly concluded that 5 U.S.C. § 5911, and OMB Circular A–45, require the Department of Defense (DOD) to base the rental fee for these trailer parking spaces on their "reasonable value," determined by comparison with comparable private trailer courts.

The mobile home parks in question consist of hard-surface trailer spaces, streets, curbs, gutters, and utility hookups on military installations. Military personnel, primarily enlisted men in the lower grades, park their mobile homes there, and occupy them as personal residences. It has been DOD's practice to charge the occupants a rate sufficient to amortize the space over a 15-year period.

Section 5911(c) provides that the rental rate for "quarters" occupied by a member of the uniformed services shall be based on the "reasonable value of the quarters and facilities to the . . . member concerned, in the circumstances under which the quarters and facilities are provided, occupied, or made available." Section 5911(a)(5) defines "quarters" for the purpose of the section as "quarters owned or leased by the Government."

Thus, the disputed issue is whether the term "quarters" includes trailer facilities consisting of a parking space, streets, curbs, gutters, and a utility hookup. We conclude that it does.

Although the legislative history of § 5911 does not explicitly define the term "quarters" (beyond a repetition of the statutory definition), it does, as both DOD and OMB recognize, show that Congress used the term "quarters" as a synonym for "housing." S. Rep. No. 829, 88th

Cong., 2d Sess.; H.R. Rep. No. 1459, 88th Cong., 2d Sess. Likewise, the comments from the then Bureau of the Budget that were set forth at length in each committee report use "housing" and "quarters" interchangeably. Accordingly, Congress' construction of the word "housing" provides some guidance for determining the proper construction of the term "quarters."

Although OMB has drawn our attention to the use of the term "housing" in several recent Acts, the uses of this term by the 88th Congress (which enacted § 5911) are, we believe, the most pertinent. The Military Construction Authorization Act, Pub. L. No. 88-390, 78 Stat. 341, is closely related to the subject matter of § 5911. In Title V, captioned "Military Family Housing," Congress authorized the Secretary to construct "family housing units and trailer court facilities." § 501. Section 505 made the inclusion of trailer facilities in "housing" even more explicit; it provided that funds were authorized "(a) for construction and acquisition of *family housing, including* . . . construction and acquisition of *trailer court facilities.* . . ." [Emphasis added.] Moreover, as the more recent Military Construction Authorization Acts cited by OMB demonstrate, Congress consistently has continued to employ a broad construction of the term "housing"—explicitly including trailer facilities—in the context of military housing. Section 508 of Pub. L. No. 93-552, 88 Stat. 1745, Section 509 of Pub. L. No. 92-545, 86 Stat. 1145.[1]

We believe that Congress intended the term "quarters" to be given a similarly broad construction in § 5911. One of the primary purposes of the legislation was to ensure the uniform application of what the House committee termed "the equitable principle that the Government should charge its employees the 'reasonable value' of quarters and related items furnished to them." H.R. Rep. No. 1459, 88th Cong., 2d Sess. 3 (hereinafter House report). The enactment of § 5911 clarified the applicability of this principle to military personnel and to persons who were not Government employees (such as employees of contractors). House report at 2, 3–4. Congress also sought to ensure "uniform and equitable application" and "uniform implementation" by authorizing the President to issue regulations to carry out the Act, 5 U.S.C. § 5911(f). House report at 6–7.[2] The only indication of any exception to the "general principle" of the Act was § 7, now § 5911(g), which provides—

---

[1] DOD cites several statutory examples to support its contrary argument that Congress has consistently viewed "quarters" as limited to rooms, bedrooms, shelter, etc. In view of the recent expressions of congressional intent just noted, we question the pertinence of the three statutes enacted in 1922 or earlier, at least 40 years before the enactment of § 5911. The remaining provision, 10 U.S.C. § 2684, was enacted in 1973 as § 509(a) of the Military Construction Authorization Act, Pub. L. No. 93-166, 87 Stat. 661. Section 511(l) of the same Act authorized funds for "family housing, including . . . construction and acquisition of mobile home facilities . . . ."

[2] The President delegated this authority to OMB in § 9(l) of Executive Order No. 11609, 3 CFR 586 (1971-1975 Compilation).

Section 3 of this Act shall not be held or considered to repeal or modify any provision of law authorizing the provision of quarters or facilities, either without charge or at charges or rates specifically fixed by law.[3]

DOD, however, suggests that Congress has authorized the present rental rates, which amortize the construction costs of the trailer facilities over a 15-year period. It relies upon the Senate report on the 1962 Military Construction Appropriation Act, which states the committee's conclusion that the "parking rate" should be based upon an amortization period of 15 years rather than 28 years. S. Rep. No. 732, 87th Cong., 1st Sess. 4–5.

In our view, this expression of intent is no longer controlling. One of the primary purposes of the enactment of § 5911, as described above, was to clarify the applicability of the reasonable value rental principle to members of the uniformed services. As the House committee observed, the legislation would "provide a basis for fixing rental rates and related charges for rental housing occupied by members of the uniformed services. . . ." House report at 2. Prior statutory provisions authorizing occupancy of certain quarters by military personnel, in contrast, "did not specify how the rental rates were to be determined." House report at 4. When Congress enacted § 5911 in 1964, it not only extended the "reasonable value" rental concept to the armed services, but also provided an exception from this rule only where another rate was set by statute (i.e., "specifically fixed by law"). Thus, the 1962 expression of the Senate committee's view is no longer controlling.

Nor are we persuaded that the various dictionary definitions cited by DOD require a contrary conclusion, because Congress is in no way restricted to a particular dictionary definition; moreover, the cited definitions are sufficiently broad to encompass trailer park facilities. Although one common thread in the definitions is a shelter or a space within a shelter, i.e., a building or rooms within a building, another thread common to these definitions is a "[p]lace of lodging" or "[p]lace of residence." Webster's New International Dictionary (2d ed. 1954), Webster's New Collegiate Dictionary (1956), American College Dictionary (1970). A trailer park space may be such a place of residence or lodging.

In conclusion, we believe that construing the term "quarters" to include trailer facilities is consistent with Congress' intent to broaden the application of the equitable principle that Government housing should be rented to employees for its reasonable value. Civilian employees, contractors' employees, and members of the military all were to be covered. Quarters, whether owned by the Government or leased by it,

---

[3] The language of this section was altered slightly in the general nonsubstantive recodification of Title 5 in 1966; it now provides:

Subsection (c) of this section does not repeal or modify any provision of statute authorizing the provision of quarters or facilities, either without charge or at rates or charges specifically fixed by statute.

were to be subject to this principle. 5 U.S.C. § 5911(a)(5). "Facilities" made available in connection with the rental of quarters—such as household furniture and equipment, garage space, utilities, subsistence, and laundry service—were also covered by § 5911. 5 U.S.C. § 5911(a)(6).

The President was authorized to promulgate regulations to ensure uniform enforcement. 5 U.S.C. § 5911(f). An arbitrary exemption from the application of the principle in favor of military employees living in trailer parks would be contrary to Congress' intention. DOD has urged that the majority of those affected are junior enlisted members, who are the least able to afford adequate housing. It does not appear, however, that Congress was persuaded to make an exception in their favor.

JOHN M. HARMON
*Acting Assistant Attorney General*
*Office of Legal Counsel*